IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **TONYA Y. HAIRSTON** | * | |
| Plaintiff, | * | |
| v. | * | Civil No. **PJM 09-3431** |
| **PRINCE GEORGE'S COUNTY** | * | |
| Defendant. | * | |

## MEMORANDUM OPINION

After a seven-day trial, a jury found Prince George's County (the "County") liable for violating Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000 *et seq.*, and Maryland's employment discrimination law, MD. CODE, STATE GOV'T §§ 20-601 *et seq.*,[1] awarding Plaintiff Tonya Hairston $12,500.00 in non-economic damages. Hairston has now filed a Motion for Attorneys' Fees and Costs (Paper No. 205), requesting an award of $456,061.50 in attorneys' fees, and $35,144.91 in expenses, for a total of $491,206.41. For the reasons that follow, the Motion is **GRANTED-IN-PART AND DENIED-IN-PART**. The Court awards Hairston $100,000.00 in attorneys' fees and $35,144.91 in expenses, for a total of $135,144.91.

I.

This litigation began in December 2009, when Hairston filed a Complaint against the County in which she asserted seven claims: (1) Title VII employment discrimination; (2) a Maryland employment discrimination claim; (3) negligent hiring, retention, and supervision; (4) gross negligence; (5) intentional infliction of emotional distress; (6) sex discrimination in violation of 42 U.S.C. § 1983; and (7) sex discrimination in violation of Article 24 of the Maryland Declaration of Rights.

---

[1] Formerly known as Article 49B of the Maryland Code, this provision mimics Title VII. *See Haas v. Lockheed Martin Corp.*, 914 A.2d 735, 755-56 (Md. 2007).

1

The core of Hairston's case was that the County subjected her to a sexually hostile work environment when it failed to address her repeated complaints of sexual harassment against another County employee, Calvin Hawkins. She argued that, despite her grievances and Hawkins' history of sexually harassing other employees, he never received any serious reprimand and was kept on as an employee. She also claimed to have suffered "mental anguish and humiliation," "loss of income and benefits," and "severe emotional distress." She demanded $1,000,000 in damages.

Before trial, Hairston stipulated to dismissal of her negligent hiring (Count 3) and gross negligence (Count 4) claims. On motion of the County, this Court dismissed her intentional infliction of emotional distress claim (Count 5). She then proceeded to trial on her Title VII, Maryland employment discrimination, § 1983, and Maryland Declaration of Rights claims.

The jury returned a verdict in Hairston's favor on the Title VII and Maryland employment discrimination claims, but rejected the § 1983 and Maryland Declaration of Rights claims. Answering special interrogatories, the jury found that:

- the County subjected Hairston to a sexually hostile work environment;
- Hawkins was her co-worker, not her employer;
- the County knew or should have known of Hawkins' harassment;
- the County "failed to take prompt and adequate action to prevent [the] harassing behavior";
- the County failed to exercise "reasonable care to prevent, and correct promptly, any sexually harassing behavior in the workplace";
- Hairston "unreasonably failed to take advantage of any preventative or corrective opportunities provided by Prince George's County to avoid or correct the harm"; and
- Hairston failed to establish "that she was subjected to sexual harassment as a result of a policy, custom or practice of Prince George's County."

Essentially on this foundation, the jury awarded Hairston $12,500.00 in non-economic damages, far below by many multiples what her counsel suggested the jury award during closing argument.

## II.

In a Title VII action, "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee (including expert fees) as part of the costs." 42 U.S.C. § 2000e-5(k). "Prevailing plaintiffs in Title VII actions ordinarily are entitled to attorneys' fees unless special circumstances militate against such an award." *E.E.O.C. v. Great Steaks, Inc.*, 667 F.3d 510, 516-17 (4th Cir. 2012).[2] A plaintiff is a prevailing party for fee-shifting purposes if he or she is "able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant." *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792 (1989). Even a plaintiff who wins nominal damages can still be a prevailing party. *Farrar v. Hobby*, 506 U.S. 103, 112 (1992).[3]

In calculating an award of attorneys' fees under Title VII, federal district courts "determine a 'lodestar' figure by multiplying the number of reasonable hours expended times a reasonable rate." *Brodziak v. Runyon*, 145 F.3d 194, 196 (4th Cir. 1998) (quoting *Daly v. Hill*, 790 F.2d 1071, 1077 (4th Cir. 1986)). Courts consider the following factors when assessing the reasonability of an attorney's rates and hours:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the

---

[2] The language of the attorneys' fees provision for the accompanying Maryland law mimics the language in Title VII. *See* MD. CODE, STATE GOV'T § 20-1015 ("In an action brought under this part, the court may award the prevailing party reasonable attorney's fees, expert witness fees, and costs.").

[3] Although these cases involved fee awards under 42 U.S.C. § 1988, the rationale applies equally to fee awards pursuant to Title VII. *See Hanrahan v. Hampton*, 446 U.S. 754, 758, n.4 (1980) (noting that the § 1988 attorneys' fees provision "was patterned upon" Title VII's attorneys' fees provision).

3

litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Brodziak*, 145 F.3d at 196 (quoting *E.E.O.C. v. Serv. News Co.*, 898 F.2d 958, 965 (4th Cir. 1990)). In the District of Maryland, a district judge's determination is also guided by Appendix B to the Court's Local Rules, which sets out non-binding guidelines regarding hourly rates. *See* LAR App. B. (D. Md.). *See also Poole v. Textron, Inc.*, 192 F.R.D. 494, 509 (D. Md. 2000) (noting that Appendix B to the Local Rules "provide[s] a presumptively reasonable range of hourly rates in civil rights and discrimination cases").[4]

Because "attorneys' fees and expenses are inseparably intertwined as equally vital components of the costs of litigation," *Daly*, 790 F.2d at 1083, an award of fees may also include reasonable litigation expenses. *See Spell v. McDaniel*, 852 F.2d 762, 771 (4th Cir. 1988). This refers to "those out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services." *Id.* (internal citations and quotation marks omitted).

Finally, with respect to both attorneys' fees and litigation expenses, the party seeking the award must provide adequate documentation of the requested amounts. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) ("Where the documentation of hours is inadequate, the district court may reduce the award accordingly."); *Trimper v. City of Norfolk*, 58 F.3d 68, 77

---

[4] Currently, Appendix B(3) of this District's Local Rules sets out the following guidelines regarding hourly rates:

    a. Lawyers admitted to the bar for less than five (5) years: $150-190.
    b. Lawyers admitted to the bar for five (5) to eight (8) years: $165-250.
    c. Lawyers admitted to the bar for nine (9) to fourteen (14) years: $225-300.
    d. Lawyers admitted to the bar for fifteen (15) years or more: $275-400.
    e. Paralegals and law clerks: $95-115.

(4th Cir. 1995) ("[T]he law is clear that no litigation costs should be awarded in the absence of adequate documentation.").

## III.

Hairston requests an award of attorneys' fees in the amount of $456,061.50. She argues that prevailing market rates for attorneys' fees are an appropriate guideline for calculating an award, and asserts that staffing choices and the number of hours expended in the service of this litigation are appropriate. Furthermore, she notes that her lawyers have "responsibly exercised billing judgment to ensure the reasonableness of this request" by voluntarily electing to bill at reduced rates, below their market rates. Hairston implicitly concedes that this case was over-litigated, but blames the County for this by reason of its excessively aggressive defense.

The County agrees that Hairston is entitled to a reasonable attorneys' fee, but challenges the size of the fee requested on essentially two grounds. Its first and primary objection is that Hairston's limited degree of success warrants a substantial reduction in the size of the award. The jury returned a verdict in favor of the County on the § 1983 and Maryland Declaration of Rights claims, and the Court dismissed the intentional infliction of emotional distress claim. On Hairston's two successful claims, the jury awarded only $12,500.00. Given her lack of success on three of the five claims she sought to submit to the jury, and given the modest size of the final award, the County argues that Hairston's "request for fees and costs amounting to thirty-nine (39) times the amount awarded as damages is so outrageously excessive as to 'shock the conscience' and should be denied." As a related point, the County argues that Hairston did not identify what fees were related to her *successful* claims, and thus the Court should award a reduced fee to reflect that lack of success.

The County's second contention is that the fee award should be reduced because this was a garden-variety employment discrimination case that was over-litigated by Hairston's lawyers. The fee petition, the County argues, demonstrates that the case was over-staffed, was characterized by excessively high billing, and contained examples of duplicative and needless billing.

Not unexpectedly, both sides spill much ink (approximately 80 pages of briefing, excluding exhibits) litigating the size of the fee award. Although the Court does not necessarily disagree with Hairston as to the reasonableness of her suggested fee rates and costs, the fact remains that, at best, this was a garden variety employment lawsuit. From Plaintiff's standpoint, it was vastly overstaffed and over-tried. A single plaintiff sued a municipal defendant; because the defendant was a state actor, the plaintiff's claims clearly fell under the umbrella of the federal civil rights statute. The County's motion for summary judgment consisted of three arguments: Hairston's harassment was not sufficiently "severe or pervasive"; the County took no adverse employment action against her; and she failed to exhaust her administrative remedies. None of these required original or even particularly extensive research or analysis. Indeed, these are the same basic arguments that defense counsel make in all employment lawsuits. No uncommon theories of liability or complex defenses were involved. The jury instructions presented no atypical issues; indeed, most of them were undisputed. The evidentiary disputes raised in the motions *in limine* were similarly run of the mill.

Despite the case's straightforward nature, seventeen individuals show up in the billing records attached to Hairston's fee petition, billing a total of 2,127 hours. Of the 17, eleven are lawyers. Six individuals billed over 50 hours on the case. Hairston's staffing at trial further supports the proposition that the fee petition goes beyond the actual needs of this case: one

partner, one associate, and a single paralegal were at counsel's table representing Plaintiff (the County had as many counsel and support personnel). This is not to suggest that every individual who worked on the case needed to be at the trial, but the disparity between pre-trial and trial staffing highlights the extent to which the case was over-staffed in light of its garden variety nature. For example, according to the fee petition, Charles Fax, a senior partner, billed almost 30 hours helping trial counsel "strategize." But, again, this was not a case that required high-level trial tactics. Indeed, a single lawyer conducted virtually the entire trial on Hairston's behalf.

Most importantly, a comparison of (1) the relief awarded by the jury, (2) the fee award requested, and (3) the amount demanded by Hairston can only lead to the conclusion that a substantially reduced fee award is justified. The Complaint requested $1,000,000 in damages. During closing argument, as the Court recalls, Plaintiff's counsel floated $700,000 or $800,000 as an appropriate award. And then the jury came back with a relatively modest award of $12,500 in non-economic damages. Although not necessarily a conclusive metric for calculating a proportionate fee award, "the results obtained" by plaintiff's counsel remains a factor the Court considers in awarding attorneys' fees. *Brodziak*, 145 F.3d at 196. Indeed, it is "the most critical factor." *Hensley*, 461 U.S. at 436.

Hairston counters that the award of another judge in this District validates the reasonableness of her fee request. In *Doe v. Odenton Volunteer Fire Company, Inc.*, Judge Richard Bennett of this District assessed a fee request by the same lawyers in a case also involving Title VII and federal and state constitutional claims. 2009 WL 3418567 (D. Md. Oct. 20, 2009). The case lasted approximately a year, and ended when plaintiffs accepted an Offer of Judgment. *Id.* at *1. The court awarded approximately $121,000 in fees and $26,000 in expenses, for a total of $147,000. *Id.* at *5.

*Doe*, however, ultimately settled for $200,000, far more than the amount awarded by the jury in the present case. *Doe* does not, therefore, strengthen Hairston's argument for her current request. The relief obtained for the *Doe* plaintiffs was not only much greater; it came without an extended trial. An award of over $450,000 for $12,500 of relief not only has the feel of unfairness; it would run afoul of both Supreme Court and Fourth Circuit law indicating that district judges should be guided, in part, by "the amount in controversy and the results obtained" when awarding fees. *See Hensley*, 461 U.S. at 436 ("Again, the most critical factor is the degree of success obtained."); *Brodziak*, 145 F.3d at 196 ("[T]he most critical factor in calculating a reasonable fee award is the degree of success obtained.") (internal citations and quotations omitted). Plaintiffs are simply not entitled to exorbitant fees, regardless of whether their success is modest or off the charts.

Although a reduced fee is appropriate, the Court is not persuaded by the balance of the County's arguments. The fee petition does not reveal either duplicative billing or senselessly high expenses. Additionally, the argument that Hairston's fee award should be proportionately reduced to reflect her lack of success on two of the four claims misses a key point: although Hairston was unsuccessful on her federal and state constitutional claims, those claims shared enough of "a common core of facts" with the Title VII and Maryland employment discrimination claims that distinguishing them would be a fruitless exercise. *See Brodziak*, 145 F.3d at 197 (internal quotations and citations omitted).

The Court awards Plaintiff $100,000 in attorneys' fees and $35,144.91 in costs, for a total fee award of $135,144.91.

## IV.

For the foregoing reasons, the Court **GRANTS-IN-PART AND DENIES-IN-PART** Hairston's Motion for Attorneys' Fees and Costs (Paper No. 205). Final Judgment will be entered in favor of Hairston and this case will be **CLOSED**.

A separate Order will **ISSUE**.

                                              /s/
                                  PETER J. MESSITTE
                        UNITED STATES DISTRICT JUDGE

**November 27, 2012**